Commonwealth *v.* Daymude, Appellant.

116

Submitted March 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert E. Graham, Jr.,* Assistant Public Defender, and *Blake E. Martin,* for appellant.

*Edwin D. Strite, Jr.,* First Assistant District Attorney, and *John R. Walker,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., April 3, 1974:

This is an appeal from an order entered under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 *et seq.*

Appellant appeared with counsel on December 11, 1968, and pleaded guilty to two counts of burglary and two of larceny. On February 7, 1969, after an examination of a pre-sentence report and questions about its contents, the court below imposed two con-

current sentences of one to six years and two concurrent suspended sentences, one of five and the other of six years.

Appellant contends that the sentences were so excessive that they should be vacated as cruel and unusual punishment; the reason they were excessive is that they are to be served after he serves a sentence in Maryland.[1] There is no merit to this contention. As the court below said, "we are not prepared to find that one who commits multiple crimes in sister states earns a constitutional immunity from punishment in each state."

Appellant also contends that his guilty pleas were involuntary in that they were induced by the manner in which he was incarcerated before his hearing.

For two of the three months before pleading guilty, appellant was separated from the general population at the Franklin County jail and kept in a room appropriately dubbed "the hole". At the PCHA hearing appellant testified that he had pleaded guilty because he was afraid that if he did not he would be returned to the hole pending trial.

The hole is a cell approximately six feet by ten feet with a wooden floor and a steel door. There is one window measuring about six by fourteen inches and about six feet off the floor. The window was broken while appellant was there—in November and December.[2] The cell is unilluminated at night and contains

---

[1] The Maryland sentence was for eight years, to start on October 3, 1967. On February 10, 1969, appellant was returned to Maryland to continue serving this sentence. On February 2, 1971, he was paroled from the Maryland sentence and returned to Pennsylvania to start serving the sentences imposed in the present case.

[2] It may be noted that "[a] prisoner's claim of excessive or inadequate heat states a claim under the Eighth Amendment and 42 U.S.C. Sec. 1983. . . ." *Rhem v. Malcolm*, 371 F. Supp. 594, 627, 14 Cr. L. 2346 (1974).

only a toilet, no sink. Drinking water must be obtained from the guard. No books or magazines are available, and there is no provision for exercise. In appellant's words, "you could walk back and forth or you could set and watch the bugs crawl up the wall." Once a week he was allowed to leave to take a shower.

Because appellant was the only witness at the PCHA hearing, it is not clear why he was placed in the hole. According to him it was because he was a State prisoner and therefore had to be segregated from the general prison population. On cross-examination appellant indicated that he was originally put in the hole for participation in a minor prison disturbance, which he characterized as "raising the devil" and "a little loudness". This line of questioning was neither followed up by the District Attorney nor is it alluded to in the opinion of the court below.

The opinion of the court below correctly notes that before pleading guilty, appellant was fully advised of the charges against him and the rights he would lose by not going to trial, and that he did not say anything about being in the hole, either before pleading or later, before being sentenced. Citing *Commonwealth v. Jaynes,* 440 Pa. 97, 269 A. 2d 457 (1970), for the propoisition that it is to be presumed that a defendant pleading guilty knows what he is doing and the burden of proving otherwise is on him,[3] the court concluded: "We do not doubt that [appellant] disliked intensively being detained in a maximum security cell. However, in the absence of comment by him or his counsel to the Court

---

[3] The burden is upon the petitioner where, as here, there is an on-the-record colloquy explaining the nature of the offenses charged, the possible punishments, and the right to counsel and trial by jury. For guilty pleas entered after January 3, 1968 (the date of *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968)), if such a colloquy is lacking, the burden is on the Commonwealth.

at the entry of the pleas and the imposition of sentence, we do doubt that his plea was the result of any compulsion."

This conclusion is not persuasive. During the PCHA hearing appellant explained his failure to refer to being in the hole as follows: "A. Yes, sir. I felt that if I would have mentioned about the conditions at the county jail, this could have went worse on me. Q. That is the reason you didn't bring it up? A. Yes, Sir. THE COURT: Do you mean that the court would impose a more severe sentence? THE WITNESS: Yes, sir, I do "

The opinion of the court below does not address itself to this testimony. At the end of the PCHA hearing the judge stated to appellant that he found it "rather difficult to understand . . . how you can say that [the sentences imposed were] . . . not exceedingly lenient." But this begs the question. The fact that appellant received what might be considered lenient sentences does not mean he had no reason to believe that he would not get off so easily if he did not plead guilty. If appellant's testimony is accepted, his failure to refer to being in the hole is explained. It was therefore the obligation of the court below to appraise that testimony.

There is a further and more fundamental difficulty, which is that the court below appears to have misconceived appellant's contention. Thus, after referring to the "extensive 'on-the-record' colloquys," the court states: "Nothing in the record even remotely suggests that [appellant] was doing anything other than what he intended to do." However, the contention is not that appellant did not know what he was doing. The contention is that he did what he did because his will was overborne.

The case may be compared to one involving the admissibility of a confession. There the question will be whether the defendant knowingly, intelligently, and

voluntarily waived his right to remain silent. Proof that the defendant was given the *Miranda* warnings may be sufficient to answer this question, but it also may not be. If the defendant confessed because of pain or fear caused by being beaten, he may have waived his right to remain silent knowingly and intelligently, but not voluntarily. In such a case the court cannot dispose of the defendant's claim by reference merely to the fact that the *Miranda* warnings were given and understood; it must appraise the evidence that the defendant was beaten and therefore confessed under compulsion. So here, it is not enough to refer to the colloquy. The court must consider what were the conditions in the hole and whether appellant pleaded guilty because he was afraid of being returned to the hole. As the record stands, appellant's testimony regarding the hole is uncontradicted. The court below in its opinion characterizes conditions in the hole as "close confinement in an unpleasant atmosphere." This description does not do justice to the record.

The case is remanded for further proceedings in accordance with this opinion.

WATKINS, P. J., and PRICE, J., dissent.